# Reed's Estate.

*Wills — Conversion — Intention — Lapsed legacy — Fiction of equity—Partial failure of purpose—Distribution.*

1. While the intention of a testator should prevail as to all . that part of his estate disposed of by will and even may be controlling as to the manner of holding and converting the entire estate including the lapsed share, it cannot be held to alter the course of inheritance, or the character of that part of the estate which passed under the intestate law.

2. Conversion is a fiction of equity applied in proper cases in order to carry out the intention of the testator, but where the intention or purpose fails, the fiction will not be applied. If there be a total failure of purpose, the heir-at-law takes, and may not only prevent a sale, but may compel the trustee, if the estate be so held, to make a conveyance of the real estate to him. In case of a partial failure of purpose while the heir cannot prevent the sale, he takes his share according to the course of inheritance under the intestate law as if no will had been made.

3. Where a testator by his will provides for a conversion of his real estate and for its distribution as personalty, but one of the beneficiaries named dies before the testator, and the gift to her lapses, the lapsed share in the real estate passes under the intestate laws to the heirs of the testator, and is not distributable as personalty to his next of kin.

4. Where in the distribution of a partial account a distributee does not appear, and the entire fund then for distribution is awarded to those distributees who do appear, the inequality will be corrected in a subsequent distribution of other funds belonging to the same estate, by awarding him who received nothing on the first distribution enough to make up his proportionate distributive share of both funds. The adjudication of a partial account simply awards distribution of the funds then in court and is not a final determination of the rights of the parties.

Argued April 25, 1912. Appeals, Nos. 156 and 157, Jan. T., 1912, by Charles M. Warner and T. A. Lamb, Executors of Harriet W. Reed, deceased, from decree of O. C. Erie Co., Feb. T., 1909, No. 46, and Feb. T., 1910, No. 45, awarding distribution in the Estate of

Charles M. Reed, deceased. Before FELL, C. J., POT-TER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Adjudication of the third and fourth partial accounts of trustee and administrator d. b. n. c. t. a.

The facts appear by the opinion of the Supreme Court.

The accounts were presented in open court and confirmed nisi and upon exceptions being filed thereto, E. L. Whittelsey, Esq., was appointed auditor.

The auditor filed a report in which, among others, the following conclusion of law was reached: "Third, the lapsed legacy of the said Nellie Reed became on the death of the testator vested in the heirs at law of the said Charles M. Reed subject to the rights of Harriet W. Reed, widow, under the intestate laws of Pennsylvania." (1)

Exceptions to the auditor's report were subsequently dismissed and the report confirmed absolutely.

*Errors assigned,* among others, were: (1) in sustaining the auditor's third conclusion of law, and (5) in dismissing exceptions and confirming the report.

*C. L. Baker* and *L. Rosenzweig,* with them *J. R. Haughney* and *C. F. Haughney,* for appellants.—If the doctrine of equitable conversion with all its legal consequences is not applied in this case in the distribution of all money arising from the sale of real estate, then the intention of testator will be defeated: Allison v. Wilson, 13 S. & R. 330; Morrow v. Brenizer, 2 Rawle 185; Gray v. Smith, 3 Watts 289; Burr v. Sim, 1 Wharton (Pa.) 252; Willing v. Peters, 7 Pa. 287; Miller v. Meetch, 8 Pa. 417; Silverthorn v. McKinster, 12 Pa. 67; Brown's App., 27 Pa. 62; Leiper v. Thomson, 60 Pa. 177; Dundas' App., 64 Pa. 325; Hood v. Penna. Society, 221 Pa. 474; Craig v. Leslie, 16 U. S. (3 Whea-

ton) 562; Lash v. Lash, 209 Ill. 595 (70 N. E. Repr. 1049); Hand v. Marcy, 28 N. J. Eq. 59; Hutchins v. Davis, 68 Ohio 160 (67 N. E. Repr. 251); Painter v. Painter, 220 Pa. 82.

Where parties interested in an estate left to them by will, agree upon its interpretation, and the estate is distributed in accordance therewith, the court will not, many years after the completion of such distribution, disturb the settlement, even though from the face of the will the interpretation appears to have been erroneous: Pearson's Est., 10 Pa. D. R. 189; Follmer's App. 37 Pa. 121; Hagerty v. Albright, 52 Pa. 274.

The acquiescence for a long time in the action of the parties operates as a contemporaneous construction of a will and bars any other construction placed thereon: Chapman v. Chapman, 59 Pa. 214; Millingar v. Sorg, 55 Pa. 215; Carr v. Wallace, 7 Watts, 394; Woods v. Wilson, 37 Pa. 379; Millingar v. Sorg, 61 Pa. 471.

A petition to open the confirmation of an auditor's report, and to decree a redistribution of a decedent's estate, will not be allowed where the petition does not allege fraud, or that the money sought to be recovered had not been paid out to the distributees mentioned in the decree of distribution: Brown's Estate, 190 Pa. 464; Lancaster v. Flowers, 208 Pa. 199.

Mistakes of law, unless accompanied with special circumstances, undue influence or misplaced confidence, constitute no ground for relief: Follmer's App., 37 Pa. 121; Piper's Est., 208 Pa. 636; Dox's Est., 227 Pa. 606; Lafferty's Est., 209 Pa. 44.

*G. W. Pepper,* with him *W. B. Bodine, Jr., H. Laussat Geyelin* and *Gunnison, Fish Gifford* and *Chapin,* for appellees.—We contend that (subject to the widow's life interest in one-third of the income of the lapsed share of real estate) all the proceeds of real estate, both from rents and sales, which passed to the dis-

tributees under the intestate laws by reason of the lapse of the two-twelfths devised to Nellie Reed, passed to the testator's heirs as real estate, and not to the next of kin as personal property: Ackroyd v. Smithson, 1 Bro. C. C. 503; Wilson v. Hamilton, 9 S. & R. 424; Luffberry's App., 125 Pa. 513; Worsley's Est., 4 Pa. D. R. 177; Rudy's Est., 6 Pa. D. R. 246; Painter v. Painter, 220 Pa. 82; Thompson's Est., 229 Pa. 542; Muderspaugh's Est., 231 Pa. 376.

The Orphans' Court of Erie County applied the rule well settled in this court that the proper method of distribution, upon an accounting by trustees, is to compute the proper share of each distributee in the entire net fund for distribution to date, and to deduct from each all former payments: Grim's App., 109 Pa. 391; Yetter's Estate, 160 Pa. 506; Landmesser's Est., 13 Pa. Superior Ct. 467; Stahl's Est., 25 Pa. Superior Ct. 402; Guenther's App., 4 W. N. C. 41.

OPINION BY MR. JUSTICE ELKIN, July 2, 1912:

The first question raised by this appeal is whether the lapsed share of Nellie Reed goes under the intestate laws as real estate to the heirs of the testator, or as personal property to his next of kin. Nellie Reed predeceased the testator several months, unmarried and without issue. That the gift to her lapsed and passed under the intestate laws was expressly decided by this court in Reed's Est., 82 Pa. 428, and, therefore, this cannot be treated as an open question. It is contended for appellants that the will worked a conversion of the real estate, and that it was not the intention of the testator to give the residuary legatees an interest in land, but that they should take the proceeds of the sale of real estate as money. There can be no doubt that this was the intention of the testator, and if no lapse had occurred, the entire estate would have been so distributed. But a lapse, not contemplated by the testator, did occur, and as to this share the will made

no provision. It passed under the intestate laws, which must necessarily govern its distribution, no matter what the intention of the testator may have been as to those beneficiaries of his bounty who took under the will. As was said by this court in Reed's Estate, supra: "This lapsed legacy (in this case two-twelfths of the residuary estate) became distributable under the intestate law, as part of the estate not disposed of by the will, when it took effect by and at the death of the testator. Of this he died intestate. His testacy was therefore of only a part of his estate." While the intention of the testator should prevail as to all that part of the estate disposed of by will, and even may be controlling as to the manner of holding and converting the entire estate, including the lapsed share, it cannot be held to alter the course of inheritance, or the character of that part of the estate which passed under the intestate law. This seems to be the settled law of Pennsylvania. Conversion is a fiction of equity applied in proper cases in order to carry out the intention of the testator, but where the intention, or purpose, fails, the fiction will not be applied. If there be a total failure of purpose, the heir at law takes, and may not only prevent a sale, but may compel the trustee, if the estate be so held, to make a conveyance of the real estate to him. In case of a partial failure of purpose, while the heir cannot prevent the sale, he takes his share according to the course of inheritance under the intestate law as if no will had been made. The authority of Ackroyd v. Smithson, 1 Bro. C. C. 503, has made this the settled law of England for more than a century. As far back as 1823 this court adopted the same rule and it has been followed in our State from that time to the present: Wilson v. Hamilton, 9 S. & R. 424; Luffberry's App., 125 Pa. 513; Rudy's Est., 185 Pa. 359; Painter v. Painter, 220 Pa. 82; Thompson's Est., 229 Pa. 542; Muderspaugh's Est., 231 Pa. 376. In the light of these decisions there is no escape from the conclu-

sion that the lapsed share of Nellie Reed in the real estate of her father, passed under the intestate law to the heirs of the testator, and was not distributable as personalty to his next of kin.

While the second question relates, primarily, to the distribution of the balances accounted for in the third and fourth partial accounts, the distribution under former partial accounts is incidentally involved. In other words, the widow having received more than she was entitled to in the former distributions, and the legatees and heirs less than their shares under the will and the law, can there be such an equitable distribution under present and future accounts as to give each distributee his or her proper share in the entire estate. We cannot regard this as even a doubtful question under the authority of our own cases. Where in the distribution of a partial account, a distributee does not appear, and the entire fund then for distribution is awarded to those distributees who do appear, the inequality will be corrected in a subsequent distribution of other funds belonging to the same estate, by awarding him who received nothing on the first distribution enough to make up his proportionate distributive share of both funds: Grim's App., 109 Pa. 391. Where the next of kin are awarded an amount of void accumulations in excess of their share, and the widow is thereby deprived of her share, the inequality will be corrected by subsequently awarding her out of the principal, a sum sufficient to make good her share of the void accumulations: Grim's Est., 147 Pa. 190. To the same effect are: Yetter's Est., 160 Pa. 506; Landmesser's Est., 13 Pa. Superior Ct. 467; Stahl's Est., 25 Pa. Superior Ct. 402. There is nothing new or novel in the principle underlying these cases. It is just, reasonable and equitable. It is predicated upon the theory that in the distribution of a partial account the rights of distributees are not finally adjudicated. In an accounting by a trustee, it is recognized as an elementary principle, that

it is proper to compute the share of each distributee in the entire net fund accounted for, no matter whether there be one or several accounts, and to deduct from each share all former payments. It should not be overlooked that we are dealing with the estate of the testator and the rights of the beneficiaries. Each beneficiary is entitled to a certain share of the entire estate and the amount of that share can only be definitely ascertained when all of the accounts are finally settled. All payments on account to a distributee, whether made direct by the executor, or trustee, or awarded on distribution of partial accounts, are to be deducted from his or her share when it is finally ascertained. This is what the rule of the above cited cases means and there is no reason in law or equity why it should be disturbed. The doctrine of res adjudicata in the sense urged by the learned counsel for appellants has no application to the facts of the present case. The adjudication of a partial account simply awards distribution of the fund then in court, and is not a final determination of the rights of the parties: Leslie's App., 63 Pa. 355; Lease v. Ensminger, 5 Pa. Superior Ct. 329. The numerous cases called to our attention by the learned counsel for appellants, and upon which they rely to ask a reversal, can be easily distinguished from the case at bar. In the present case there is no effort to surcharge the accountants, or to open former adjudications, or to raise any question now that was litigated and decided in the distribution of former partial accounts, and nothing attempted to be done here gives rise to an equitable estoppel.

Decree affirmed, costs to be paid out of the funds for distribution.